## IN THE OREGON TAX COURT

## GILMORE STEEL CORPORATION
*v.*
## DEPARTMENT OF REVENUE
(TC 1584)

Roger L. Meyer and Amy L. Houchen, Newcomb, Sabin, Meyer & Schwartz, Portland, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered July 9, 1984.

**SAMUEL B. STEWART, Judge.**

The plaintiff appealed the defendant's order No. VL 81-699 sustaining the board of equalization's determination that the subject property had a true cash value of $3,400,000 on January 1, 1978. The plaintiff contended that the subject property was obsolete, unrentable and unmarketable and therefore had a true cash value of zero dollars.

The subject property, improvements only, identified as Assessor's Account No. 97126-025, is a steel pellet plant or

direct reduction facility located in Multnomah County which converts iron ore slurry into metalized pellets which are used to make steel. The subject property is owned by Midland-Ross Corporation but operated by the plaintiff and incorporated into plaintiff's total operation.

The parties are in agreement that a market approach to value is inappropriate because there are no comparable sales upon which to base a valuation. The plaintiff alleges that the only approach for which there is reliable data is the cost approach, while the defendant offered an estimate of value based upon discounting the rentals due the owner from the plaintiff.

The parties stipulated that on or about December 30, 1974, the plaintiff entered into an agreement with Midland-Ross Corporation regarding the construction of the pellet plant and a lease was executed concurrently therewith. The lease was for an initial period of 10 years with options to buy or renew the lease for another 10 years. If the plaintiff chose not to purchase or to renew the lease, Midland-Ross was obligated to remove the plant. Pursuant to Section 4 of the agreement, Midland-Ross absorbed $2 million of the lease rent which, at an annual rental of $800,000 (Sections 1 and 2 of the lease), resulted in forgiveness payments of the first two and one-half years of the lease term.

Mr. R. J. Frank, Appraiser, R. J. Frank and Associates, testified for the plaintiff. His major point of disagreement with the value placed on the assessment and taxation rolls was that economic obsolescence was not properly recognized. The witness stated that the operation of the plant had always been a negative because the price of scrap was lower than the cost of producing pellets. While it is possible to manufacture a higher quality steel using all pellets, Mr. Frank testified that the plaintiff had only one order for a lower copper content than could have been manufactured using all scrap. This order totaled less than one percent of the plaintiff's total steel production. (Plaintiff's Exhibit 1 at 6.)

Mr. Frank found a zero dollar value for the subject property via a cost approach using both the assessor's reproduction cost new of $24 million and his own estimate of reproduction cost new, allegedly derived from plaintiff's records, of $20 million. In both instances, he applied the

assessor's estimate of 48 percent for physical depreciation and 30 percent for functional obsolescence. Mr. Frank then departed from the assessor's determination of an eight percent economic obsolescence and applied a factor of 22 percent economic obsolescence, resulting in a zero dollar value. (Plaintiff's Exhibit 1 at 15.)

He also testified that during 1977, the cost per ton for scrap was $72.42 versus $113.96 for pellets and, for 1978, the respective costs were $79.97 versus $176.91. (Plaintiff's Exhibit 1 at 8.)

Mr. Frank stated that the increase in the cost of pellets was principally due to the increase of cost of natural gas and that projections were for even higher costs of gas in the future. It was contended that the subject property was only useful in conjunction with a steel mill and that the steel mill would realize more profit using scrap than using pellets. The witness concluded that on January 1, 1978, the subject property was economically obsolete and therefore valueless.

Mr. Frank testified that he did not take the cost of removal of the plant into consideration when he made his estimate of value because he determined that the subject property had a zero dollar value and any cost of removal included would have resulted in a minus value.

Mr. Glenn Coxen, Supervisor of the Industrial Section, Department of Revenue, testified for the defendant. He agreed that a market data approach to valuation was not possible due to lack of comparble sales. The witness stated that no information regarding income was available to the defendant except for the lease agreement. Therefore, the defendant capitalized the income flow from the lease and valued the subject property as if it were a commercial property. Mr. Coxen recognized that this technique of capitalizing the periodic lease payments is not a traditional income approach per se but he stated that this was the best evidence available.

The parties agreed that the contract rent of $800,000 per year for 1975 through 1984, adjusted by rent forgiveness, improvements and expenses that Midland-Ross was obligated to make pursuant to the lease, resulted in an annual rent of approximately $300,000 per year. This income stream must be

discounted to value as of the subject date at an appropriate interest rate.

Mr. Coxen alleged that 11 percent was the proper discount rate, testifying that this figure was determined by taking an average of capitalization rates from similar companies as reported in *Forbes*. The witness concluded that, based upon lease payments of $300,000 per year for seven years, the discounted value at an Inwood factor of 11 percent was $1,413,600 and alleged that this figure represented the true cash value of the subject property. The defendant made no allowance in its estimate of value for the removal of the plant at the end of the first lease period, stating that in January 1978 there was no certainty that the plant would be removed in 1985 because the lease allowed options after that date.

The plaintiff contended that in valuing the subject property by discounting the rentals due, defendant focused on a contract right rather than on the value of the plant itself. Assuming, without conceding, that the discounted contract rent is a proper measure of value, the plaintiff stated that the proper discount rate to use should be a basic mortgage rate of 10 percent plus an additional three percent for risk of plaintiff's default. The result of applying a 13 percent discount rate to the annual payments is $1,326,540. (Plaintiff's Opening Brief at 7.)

However, the plaintiff contended that, even under this theory, removal costs must be recognized. The plaintiff estimated that the projected cost of removal at the end of 1984 would be approximately $3 million. Deduction of this estimated removal cost resulted in a negative figure. Therefore, the plaintiff concluded that the subject property had a zero dollar value under defendant's approach to value.

■  The plaintiff's position that an additional three percent risk factor should be included in the capitalization rate was essentially unsubstantiated. The defendant's estimate, based on an average of capitalization rates from similar companies, that a proper capitalization rate was 11 percent is more persuasive than the plaintiff's estimate. Discounting the income stream agreed upon by the parties at an Inwood factor of 11 percent results in $1,413,600.

The plaintiff contends that the relationship between the plaintiff and Midland-Ross is not an arm's-length one. Therefore, the lease agreement is not a satisfactory indicator of value. Regardless of this entwinement, there was a binding, noncancelable lease on the subject date requiring annual payments for seven more years. That lease agreement had a certain value regardless of whether it was economically feasible to operate the subject property. However, that same lease agreement required the subject property to be removed if certain conditions were not met. A knowledgeable buyer would certainly have discounted an offer to purchase Midland-Ross' contract right by deducting an estimated cost of removal of the plant.

The parties disagree on removal costs. Estimates were offered by each but no direct evidence was introduced. However, the parties stipulated to the submission in evidence of portions of transcript of the testimony before the Department of Revenue. That transcript included testimony from the plaintiff's controller, stating that the plaintiff had received a bid of $387,000 for removal of the plant.

Based upon the best evidence presented, the court finds that the rental income stream from the subject property had a value of $1,413,600 less removal costs of $387,000. Rounding these figures results in a determination that the true cash value of the subject property on January 1, 1978, was $1 million.